**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

COREY A. DAVIS,

       Petitioner,

-vs-                                 Case No.  8:10-CV-1555-T-27TBM

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

## ORDER

      Petitioner, an inmate of the Florida penal system proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging convictions for possession of cocaine and delivery of cocaine entered in 2004 by the Thirteenth Judicial Circuit Court, Hillsborough County, Florida (Dkt. 1). Pursuant to an order of this Court (see Dkt. 8), Petitioner subsequently filed an Amended Petition for Writ of Habeas Corpus ("amended petition") (Dkt.11), and a memorandum of law in support of the amended petition (Dkt. 12). Respondent filed a response to the amended petition (Dkt. 18). Petitioner filed a reply to the response (Dkt. 21).

      Respondent asserts no challenge to the amended petition's timeliness. The matter is now before the Court for consideration of Petitioner's claims. An evidentiary hearing is not required for the disposition of this matter. Rules Governing Section 2254 Cases, Rule 8(a) (2013).

## PROCEDURAL HISTORY

      On June 6, 2003, Petitioner was charged with possession of cocaine and delivery of cocaine (Respondent's Ex. 1, Vol. I at pp. 14-18). Following a jury trial, the jury found Petitioner guilty as charged (Id. at p. 79). Petitioner was sentenced to an 180 month prison term on the delivery

conviction, and a 60 month prison term on the possession conviction, to run concurrently with the delivery conviction (Id. at pp. 82-92).  Petitioner filed a motion to mitigate his sentence, which the trial court granted, reducing Petitioner's sentence to a 10 year prison term on the delivery conviction (Id. at pp. 93, 102-104).  The state appellate court affirmed Petitioner's convictions and sentences on February 9, 2007 (Respondent's Ex. 5).

On September 13, 2007, Petitioner filed a *pro se* Motion for Post Conviction Relief pursuant to Florida Rules of Criminal Procedure, Rule 3.850 ("Rule 3.850 motion"), which he subsequently supplemented (Respondent's Exs. 7, 8).  On November 17, 2008, the state post conviction court summarily denied the Rule 3.850 motion (Respondent's Ex. 9).   The state appellate court affirmed the denial of the Rule 3.850 motion on February 19, 2010 (Respondent's Ex. 12).

Petitioner filed his amended petition in this Court raising six grounds for relief (See Dkts. 11, 12).

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings is highly deferential. Those findings are presumed to be correct unless rebutted by clear and convincing evidence.  Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000).  It is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).  "Under § 2254(d), a habeas

court must determine what arguments or theories supported. . .the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Wetzel v. Lambert*, 132 S.Ct. 1195, 1198 (2012) (citing *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)).

**Ineffective Assistance of Counsel**

To have a facially valid claim alleging ineffective assistance of counsel, Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component. *Id*. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. at 788). As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

**Procedural Default**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies

available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995) ("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, Petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires Petitioner to demonstrate that some objective factor external to the defense

4

impeded the effort to raise the claim properly in the state court. *Henderson*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  Petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, Petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

**DISCUSSION**

**Ground One**

Petitioner contends that he was denied a fair trial when Detective Viera-Roquemore, the undercover detective to whom Petitioner sold cocaine, testified that she knew Petitioner prior to the date of the offense.  Petitioner argues that the testimony was irrelevant and implied that Detective Viera-Roquemore knew Petitioner because he had committed prior crimes.

Respondent argues that this claim is unexhausted, and procedurally barred from review in this Court, because Petitioner did not present the federal nature of the claim to the state appellate court on direct appeal (Dkt. 18 at p. 9).  The Court agrees.

A petitioner must present each claim to a state court before raising the claim in federal court.  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' *federal claims* to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights"  *Duncan v. Henry*, 513 U.S. at 365 (emphasis added) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). *See also Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the *federal rights* which allegedly were violated.") (emphasis added).

Petitioner did not assert a federal constitutional claim in his Initial Brief on direct appeal (Respondent's Ex. 9 at pp. 6-12).  Instead, Petitioner argued that the trial court abused its discretion in denying his motion for mistrial because the State used prior bad acts evidence without filing a notice of intent to use the evidence, in violation of Section 90.404(b), Florida Statutes (Id.).  Petitioner made no reference to any constitutional provision or federal law with respect to these arguments.  Instead, his substantive arguments addressed only Florida law.  Petitioner's cursory and

6

vague statement at the conclusion of his Initial Brief that "a mistrial should have been granted as it was necessary to ensure that the defendant received a fair trial" (Id. at p. 12) was no more than a "needle in a haystack," and insufficient to present fairly to the state appellate court the federal constitutional issue now before this Court. *See McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) (exhaustion requires a habeas petitioner to do more than scatter some makeshift needles in the haystack of the state court record) (citation omitted). *See also Anderson v. Harless*, 459 U.S. 4 (1982) (petitioner's general appeal to a constitutional guarantee as broad as "due process" is not enough to present the "substance" of such a claim to a state court); *Zeigler v. Crosby*, 345 F.3d 1300, 1308 n.5 (11th Cir. Fla. 2003) (petitioner's state court brief which stated that he "was denied due process and a fair trial . . ." was "insufficient to present fairly to the state court the federal constitutional issue" because "this language could just be asserting a fair trial claim under the Florida Constitution and Florida's Due Process Clause"). Therefore, with respect to Ground One of the instant petition, Petitioner did not fairly apprise the state court of the federal nature of his claim.[1] Petitioner therefore failed to exhaust his state court remedies, and is procedurally barred from raising Ground One in his federal habeas petition.[2]

Even if Petitioner had exhausted the federal nature of his claim in state court, the claim would still fail on the merits.  During direct examination, the prosecutor asked Detective Viera-

---

[1]It would be futile to dismiss this case to give Petitioner the opportunity to exhaust his federal claim because it could have and should have been raised on direct appeal. *See Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1989) (where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are considered procedurally barred in federal court). Florida's state procedural rules precluding a second direct appeal, and the time limitations for bringing an appeal, bar Petitioner's returning to state court to present the claims. See Fla. R. App. P. 9.110(b).

[2]Petitioner has not alleged or shown either cause excusing the default or actual prejudice resulting from the bar. Further, he has not alleged or shown that he is entitled to the fundamental miscarriage of justice exception.

Roquemore "were you able to identify the defendant by name?" (Respondent's Ex. 1, Vol. II at p. 66). Detective Viera-Roquemore answered "Yes. I previously knew who he was prior to that date." Defense counsel objected and moved for a mistrial, arguing that because Detective Viera-Roquemore was a detective and testified regarding a drug transaction with Petitioner, her testimony that she previously knew Petitioner implied that Petitioner had committed other crimes (Id. at pp. 66-67). The trial court denied the motion for mistrial (Id. at p. 67).

First, Detective Viera-Roquemore testified that she knew "who [Petitioner] was prior" to the day of the subject drug transaction. She did not indicate that she knew him because he had committed prior criminal offenses.

Second, Detective Viera-Roquemore identified Petitioner as the individual who sold her cocaine on a street corner while she was working undercover in Plant City (Id. at pp. 56-66). According to her testimony, Detective Viera-Roquemore saw Petitioner on a street corner and told him she needed cocaine (Id. at p. 58). Petitioner told her to get out of her car and then searched her car (Id. at pp. 58-59). He then told her to drive once around the block (Id.). When she returned, she saw Petitioner walking toward his car, and then he opened the trunk of the car (Id. at p. 63). Petitioner subsequently got into Detective Viera-Roquemore's car, and he handed her the cocaine in exchange for $200.00 (Id. at p. 64). Therefore, Detective Viera-Roquemore's identification of Petitioner was reliable as she had ample time and opportunity to observe Petitioner during the drug transaction.

In light of the evidence presented at trial, Detective Viera-Roquemore's testimony that she previously knew "who [Petitioner] was" prior to the date of the subject drug transaction did not have a "substantial and injurious effect or influence" on the jury's verdict and did not result in actual

8

prejudice.  *Brecht v. Abrahamson*, 507 U.S. 619, 622-623 (1993) (a petitioner is not entitled to habeas relief unless trial error resulted in actual prejudice).  Consequently, Petitioner was not denied a fair trial.

Accordingly, Ground One is denied as unexhausted and as lacking merit.

**Ground Two**

Petitioner complains that counsel was ineffective in failing to call his mother and his fiancee, Julanda Freeman, to testify at trial that Petitioner lived with Freeman at the time of the crime to rebut Detective Viera-Roquemore's testimony that Petitioner lived with his mother.  Petitioner raised this claim in Ground One of his Rule 3.850 motion (Respondent's Ex. 7 at pp. 2-9).  In denying this claim, the state post conviction court stated:

> In ground 1 of his Motion, Defendant alleges that his trial counsel provided ineffective assistance when he failed to call either Defendant's fiancée, Julanda Freeman, or mother, Laverne Davis, to impeach Detective Viera-Roquemore's testimony that he lived with his mother at the corner of Empire and Washington, the area which the offense occurred in the instant case, at the time of the offense. He claims that these potential witnesses were available and willing to testify that at the time of the offense he did not reside with his mother but rather in an apartment with his fiancée. (See Motion, attached.)

> A failure to call witnesses may constitute ineffective assistance of counsel when a defendant proffers the substance of the witnesses' testimony and the witnesses may have been able to cast doubt on the defendant's guilt. *See Morris v. State*, 931 So.2d 821, 830 (Fla. 2006).  However, when the testimony is of a benign nature, the defendant is not entitled to relief because the prejudice prong of the *Strickland* test is not satisfied. *See Gonzalez v. State*, 990 So.2d 1017, 1025 (Fla. 2008).

> The testimony Defendant alleges that his trial counsel should have impeached occurred in the following exchange:

> Prosecutor: On March 10, 2003, how did you get in contact with Corey Davis?

9

Detective Viera-Roquemore: I came to the corner of Empire and Washington which is where he resides in that area, or right there at that corner with his mother.

Prosecutor: And how did you contact him? Did you — how did you-first establish contact with Mr. Davis?

Detective Viera-Roquemore: Um, I don't believe I made a telephone call that day. Just basically came down to the area, was purchasing narcotics from other areas in Plant City, happened to see him on the corner and made contact with him.

(See Motion and Trial Transcript, page 58, attached.)

The most probative evidence presented by the prosecution at trial was Detective Viera-Roquemore's testimony that Defendant sold her twenty-two pieces of a substance that appeared to be crack cocaine and Florida Department of Law Enforcement crime laboratory analyst Steven Hester's ("Mr. Hester") testimony that the substance Defendant sold to Detective Viera-Roquemore was indeed crack cocaine. (See Trial Transcript, pages 63-69 and 73-76, attached.)
When considering Detective Viera-Roquemore's and Mr. Hester's testimony, coupled with the fact that Defendant's mother's residence and the apartment he claims to have lived at the time of the offense are located in the same city, trial counsel's failure to impeach Detective Viera-Roquemore's statement that he lived with his mother at the time of the offense does not undermine confidence in the outcome of the trial.

Consequently, Defendant's claim fails to satisfy the prejudice prong of the *Strickland* test and therefore he is not entitled to relief on his ground 1 of this Motion.

(Respondent's Ex. 9 at pp. 3-4).

During trial, Detective Viera-Roquemore testified in pertinent part that she "came to the corner of Empire and Washington which is where he resides in that area, or right there at that corner house with his mother." (Respondent's Ex. I, Vol. II at p. 58). Petitioner's mother and Freeman's testimony that Petitioner actually lived with Freeman only would have been relevant to impeach Detective Viera-Roquemore on a collateral issue. Their testimony would not have impeached

Detective Viera-Roquemore's testimony that she approached Petitioner on the street, and that Petitioner sold her cocaine while in her car.

Moreover, the exhibits Petitioner attached to his Rule 3.850 motion support Detective Viera-Roquemore's testimony that Petitioner resided at his mother's residence at the time of the drug transaction.  Petitioner's mother's affidavit indicates that she lived at 1301 W. Washington Street (Respondent's Ex. 7 at "Exhibit C").  The Criminal Report Affidavit indicated that Petitioner's local and permanent address was 1301 W. Washington Street (Id. at "Exhibit E").  Further, the Florida Department of Highway Safety's Motor Vehicle Inquiry Report likewise indicated that Petitioner's address was 1301 W. Washington Street (Id. at "Exhibit F").  Therefore, even if Petitioner actually lived with Freeman at the time of the offense, there were multiple documents indicating that his permanent residence was at his mother's house.[3]  Therefore, Petitioner has failed to meet the prejudice prong of *Strickland* because he has not demonstrated that the testimony of Freeman and Petitioner's mother would have changed, or had any affect on, the outcome of the trial.

Based upon the foregoing, the Court finds that the state court's denial of this claim was neither an unreasonable application of *Strickland*, nor based on an unreasonable determination of the facts.  Accordingly, Ground Two does not warrant relief.

**Ground Three**

Petitioner asserts that on the date of the crime, he owned a red car.  He contends that counsel was ineffective in failing to present evidence to impeach Detective Viera-Roquemore's testimony that Petitioner removed the drugs from a small blue car, that she had previously seen him in that car,

---

[3]The Court notes that Petitioner admits that on the date of the offense, March 10, 2003, he was visiting his grandmother's house, which is in the immediate vicinity of his mother's house (See Respondent's Ex 7 at "Exhibit A, p. 1" and "Exhibit B").

11

and that she had been informed by the Plant City Police Department that the blue car belonged to

Petitioner.  Specifically, Petitioner contends that counsel should have obtained records from the

Florida Department of Highway Safety which showed that Petitioner did not own a blue car at the

time of the offense.  He also contends that counsel should have called Freeman to testify that she and

Petitioner jointly owned a red car, and John Moran to testify that he had sold Petitioner a red car.

Petitioner raised this claim in Ground Two of his Rule 3.850 motion (Respondent's Ex. 7 at

pp. 10-16).  In denying the claim, the state post conviction court stated:

> In ground 2 of his Motion, Defendant alleges that his trial counsel provided
> ineffective assistance when he failed to impeach Detective Viera-Roquemore's
> testimony that Defendant owned a small four-door blue vehicle at the time of the
> offense. He claims that he previously owned a vehicle matching Detective Viera-
> Roquemore's description but that on the date of the offense he owned a red vehicle
> and that this information could have been proven through Department of Motor
> Vehicle records. (See Motion, attached.)
>
> When the testimony which trial counsel fails to object is of a benign nature,
> the defendant is not entitled to relief because the prejudice prong of the *Strickland*
> test is not satisfied. *See Gonzalez v. State*, 990 So.2d 1017, 1025 (Fla. 2008).
>
> As stated *supra* in ground 1, the most probative evidence presented by the
> prosecution was Detective Viera-Roquemore's testimony that Defendant sold her
> twenty-two pieces of a substance that appeared to be crack cocaine and Mr. Hester's
> testimony that the substance was indeed crack cocaine. (See Trial Transcript, pages
> 63-69 and 73-76, attached.)  Given this testimony, trial
> counsel's failure to impeach Detective Viera-Roquemore's testimony regarding the
> color of Defendant's vehicle did not undermine confidence in the outcome of the
> trial.
>
> Consequently, Defendant's claim fails to satisfy the prejudice prong of the
> *Strickland* test and therefore he is not entitled to relief on his ground 2 of this Motion.

(Respondent's Ex. 9 at pp. 4-5).

During trial, Detective Viera-Roquemore testified in pertinent part that at the time of the

offense, the car that Petitioner had at the scene was a "four-door, blue, smaller vehicle."

(Respondent's Ex. 1, Vol. II at p. 70).  She further testified that she knew it was Petitioner's car because "that was the car that [she] had seen him and met him previously in and advised that was his vehicle before by Plant City Police Department."  (Id.).  Petitioner avers that Detective Viera-Roquemore's testimony was false because he and Freeman owned a red car together at the time of the offense.

Although Petitioner may have owned a red car at the time of the offense, the records Petitioner provided in support of this claim fail to establish that he did not own a blue four-door car at the time of the offense, and that the blue car was not at the scene of the offense.  The Florida Department of Highway Safety records indicate that Petitioner owned a blue four-door vehicle, and the title was issued on September 18, 2002 (Respondent's Ex. 7 at "Exhibit F2").  Even though the record indicates that the blue vehicle was "sold," the record does not indicate the date on which it was sold.[4]  Further, in his affidavit, Petitioner attested in pertinent part that he "owned a small Red four door foreign car prior to the charges and afterward" and that he "never met [Detective Viera-Roquemore] before in a small blue four door foreign car prior to the charges and or on the date of the accused crime."  Petitioner did not, however, attest that he did not own a blue four-door car at the time of the offense, or that his blue car was not at the scene of the offense.

Petitioner has failed to establish that Detective Viera-Roquemore's testimony regarding the vehicle Petitioner had at the scene of the offense was false or inaccurate.  Therefore, Petitioner has failed to establish that counsel was deficient in failing to obtain the Department of Highway Safety records, and in failing to call Freeman and Moran to testify.  Further, Petitioner has failed to establish

---

[4]The Court notes that the "Run Date" on all the Florida Department of Highway Safety records indicates 5/17/2007.  Therefore, it appears that Petitioner obtained the records on that date.  Consequently, without further information, Petitioner's records show only that the blue vehicle was sold on or before May 17, 2007.

prejudice.

The state courts' adjudication of this claim was neither an unreasonable application of *Strickland*, nor based on an unreasonable determination of the facts.  Accordingly, Ground Three does not warrant relief.

**Ground Four**

Petitioner contends that counsel was ineffective in failing to object to, and move for a mistrial and request a curative instruction as a result of, Detective Viera-Roquemore's testimony that she gave $200.00 to Petitioner in exchange for 22 rocks of crack cocaine.  Petitioner appears to argue that the testimony was irrelevant and prejudicial because he was charged with possession and delivery of cocaine, and the amount of money he received in exchange for the cocaine was only relevant to a sale of cocaine charge.

Petitioner raised this claim in Ground Three of his Rule 3.850 motion (Respondent's Ex. 7 at pp. 16-22).  In denying the claim, the state post conviction court stated:

> In ground 3, Defendant alleges that his trial counsel provided ineffective assistance by failing to object to Detective Viera-Roquemore's testimony that she gave Defendant $200 in exchange for the crack cocaine. He claims that because he was only charged with Delivery and Possession of the cocaine, any testimony regarding the exchange of money was not relevant. (See Motion, attached.)

> Relevant evidence is evidence tending to prove or disprove a material fact. Fla. Stat. 90.401 (2003). "Delivery" means the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship. Fla. Stat. 893.02 (2003).

> Detective Viera-Roquemore testified that she gave Defendant $200 for the crack cocaine.  (See Trial Transcript, pages 64-66, attached.) The fact Defendant accepted the money tends to show that he then, in exchange for the money, "delivered" the cocaine to Detective Viera-Roquemore.

Consequently, the testimony was relevant and trial counsel was not ineffective for failing to object to it. Therefore defendant is not entitled to relief on ground 3 of his Motion.

(Respondent's Ex. 9 at pp. 5-6).

The state post conviction court found that Detective Viera-Roquemore's testimony that she gave Petitioner $200.00 in exchange for the cocaine was relevant and admissible under Florida law. Therefore, the post conviction court determined that counsel was not deficient in failing to object to the testimony.

The state court has answered the question of what would have happened had defense counsel objected to the testimony regarding the amount of money exchanged for the cocaine - the objection would have been denied. Consequently, Petitioner has failed to establish deficient performance.[5] *See e.g., Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (Alabama Court of Criminal Appeals had already answered the question of what would have happened had counsel objected to the introduction of petitioner's statements based on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection).

Moreover, Petitioner has failed to demonstrate prejudice because he has neither shown that had counsel objected, the objection would have been successful, nor that exclusion of Detective Viera-Roquemore's testimony regarding the amount she paid for the cocaine would have carried a reasonable probability of changing the outcome of the trial. Detective Viera-Roquemore's testimony

---

[5]Federal courts "will grant [habeas] relief if. . .a state trial judge's erroneous admission of evidence makes a petitioner's trial 'so fundamentally unfair that the conviction was obtained in violation of the due process clause of the fourteenth amendment[.]'" *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 n.8 (11th Cir. 2005) (quoting *Thigpen v. Thigpen*, 926 F.2d 1003, 1012 (11th Cir. 1991)). Petitioner has not alleged or established that the admission of the Detective Viera-Roquemore's testimony regarding the amount of money she gave Petitioner for the cocaine rendered the trial fundamentally unfair.

established that Petitioner possessed cocaine and delivered it to her (Respondent's Ex. 1, Vol. II at

pp. 63-66).[6]

Petitioner has not shown that the state court's decision involved an unreasonable application

of *Strickland* or was based on an unreasonable determination of the facts. Accordingly, Ground Four

does not warrant relief.

**Ground Five**

Petitioner contends that counsel was ineffective in failing to object to, and move for a mistrial

and request a curative instruction as a result of, the prosecutor's comment during closing argument

that hundreds of years ago law enforcement did not have recording or CSI equipment, yet juries were

still able to reach decisions. Petitioner appears to argue that he was prejudiced by the comment

because he is African-American, and the comment caused the jury to think back to a period of time

when African-Americans "faced barbaric treatment" and "had no respected rights." (Dkt. 12 at p.

16).

Petitioner raised this claim in Ground Five of his Rule 3.850 motion (Respondent's Ex. 7 at

pp. 29-34). In denying the claim, the state post conviction court stated:

> In ground 5, Defendant alleges that his trial counsel was ineffective for failing
> to object to prejudicial remarks made by the State during closing argument.
> Specifically, he alleges that trial counsel should have objected to the prosecution's
> statement that:
>
> > "200 years ago when we had this constitution, there were no cameras
> > to take these photos. There was no CSI equipment. There were no
> > video cameras that could have done the sell stuff. And yet, juries even

---

[6]Under Florida law, "delivery" means "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Sec. 893.02, Fla. Stat. "Possession" is defined as "having personal charge or exercising the right of ownership, management or control over the article in question." *State v. Brider*, 386 So.2d 818, 819 (Fla. 2d DCA 1980).

200 years ago were able to make a decision just like you are here today."

He claims that this remark was racially discriminatory and tainted the jury. (See Motion, attached.)

To prevail on an ineffective assistance of counsel claim based on trial counsels [sic] failure to object to comments made during closing argument, the defendant must show that (1) the comments were improper or objectionable and that there was no tactical reason for failing to object and (2) the comments deprived the defendant of a fair and impartial trial, materially contributed to the conviction, were so harmful or fundamentally tainted as to require a new trial or were so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise. *See Stephens v. State*, 975 So.2d 405, 420-421 (Fla. 2007).

Wide latitude is permitted when making closing argument to a jury and comments are not improper or objectionable when made in the context of the evidence established during trial. *Id*. In addition, a prosecutor's remarks are not improper or objectionable when they are an "invited response" to arguments previously made by defense counsel on the same subject. *Id*.

In the instant case, during closing argument defense counsel argued that the State had not proven that Defendant was the person who sold cocaine to Detective Viera-Roquemore on the day in question. He argued that the police failed to use any audio or video recording equipment or even to have another officer use binoculars to witness the transaction, and that because Detective Viera-Roquemore had made hundreds of arrests, she could not possibly identify Defendant as the man who sold her cocaine on that particular date. (See Trial Transcript, pages 87-90, attached.)

As part of his response to this argument, the prosecutor stated that hundreds of years ago law enforcement did not have recording or CSI equipment, yet juries still reached decisions. (See Trial Transcript, pages 94-96, attached.) His argument clearly was that if Detective Viera-Roquemore's testimony was credible enough, her testimony alone was sufficient to sustain a verdict even without an audio or video recording of the transaction.

The prosecutor's comments were in the context of the evidence presented at trial, and moreover, they were an "invited response" to arguments made by defense counsel. Consequently, they were neither improper nor objectionable. [FN3] Therefore defendant is not entitled to relief on ground 5 of his Motion.

17

[FN3] The Court notes in his Motion, Defendant makes references to statements regarding burning people at that stake 200 years ago because they were a witch. (See Motion, attached.) However, these comments were made by defense counsel and not the prosecution. (See Trial Transcript, pages 103-104, attached.)

(Respondent's Ex. 9 at pp. 7-8).

The state post conviction court found that the prosecutor's comments were "neither improper nor objectionable." Therefore, the post conviction court implicitly determined that counsel was not deficient in failing to object to the comments.

The state court has answered the question of what would have happened had defense counsel objected to the prosecutor's statements - the objection would have been denied. Consequently, Petitioner has failed to establish deficient performance. *See Callahan v. Campbell*, 427 F.3d at 932.

Further, Petitioner has failed to demonstrate that his counsel committed prejudicial error under *Strickland* for not objecting to the comments. Improper prosecutorial remarks amount to a constitutional violation only if the remarks render the proceedings fundamentally unfair. *Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir. 1997). The relevant inquiry is whether the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. at 642). In making this assessment, a reviewing court must evaluate the allegedly improper comments in the context of both the prosecutor's entire closing argument and the trial as a whole. *Branch v. Estelle*, 631 F.2d 1229, 1233 (5th Cir. 1980).

During closing argument, defense counsel attacked Detective Viera-Roquemore's identification of Petitioner as the individual who sold her the cocaine, and failure to use any audio or video equipment during the drug transaction (Respondent's Ex. 1, Vol. II at pp. 87-90). In response to defense counsel's argument, the prosecutor pointed out that Detective Viera-Roquemore is an experienced narcotics officer who frequently went undercover to make "hand-to-hand" drug transactions without using recording devices (Id. at pp. 90-100). In support of his argument that Detective Viera-Roquemore's eyewitness testimony was sufficient to establish that Petitioner committed the crimes beyond a reasonable doubt, and that audio or video evidence was not required, the prosecutor argued that 200 years earlier this country had the same constitution as today,[7] and juries were able to make decisions in criminal cases without "CSI" or "video camera" evidence (Id. at p. 95). Despite Petitioner's argument to the contrary, this statement cannot be fairly characterized as racially discriminatory on the basis that African-Americans were treated poorly and had little rights 200 years ago. The prosecutor's rebuttal of defense counsel's argument was not, therefore, improper. *See United States v. Young*, 470 U.S. 1, 11-13 (1985) (when prosecutor's comments are an "invited reply" in response to defense counsel's own remarks, and he "[does] no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction").

Moreover, taken in the context of the entire trial, the prosecutor's comments, even if improper, were not so egregious as to render the trial fundamentally unfair. Nor did they infect the trial with such unfairness that the resulting conviction amounts to a denial of due process. *See Tucker*

---

[7]The prosecutor referenced the constitution and "Plymouth Rock" because defense counsel had referenced them during voire dire (Respondent's Ex. 1, Vol. II at p. 34).

*v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986), *cert. denied*, 480 U.S. 911 (1987) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."). The prosecutor's comments are not of such magnitude as to invalidate the entire trial.

In sum, counsel was not ineffective in failing to object to the prosecutor's argument. Even if he had objected, the objection would have been overruled. Petitioner demonstrates no prejudice from any claimed deficient performance. Petitioner's claim of ineffective assistance of counsel therefore fails both prongs of the *Strickland* test. Petitioner has not met his burden of proving that the state courts' resolution of this claim was an unreasonable application of controlling Supreme Court precedent. Accordingly, Ground Five fails on the merits.

**Ground Six**

Petitioner contends that prosecutorial misconduct denied him a fair trial. The Court agrees with Respondent that this claim is procedurally barred from review.[8]

Petitioner raised this claim in Ground Seven of his Rule 3.850 motion (Respondent's Ex. 8). In denying the claim, the state post conviction court stated that "Defendant is procedurally barred from raising this claim in the instant Motion" because "[c]laims of prosecutorial misconduct could and should have been raised on direct appeal. . . ." (Respondent's Ex. 9 at p. 9).

In Florida, claims alleging prosecutorial misconduct must be raised on direct appeal. *Spencer v. State*, 842 So.2d 52, 60 (Fla. 2003). Petitioner did not raise a claim that the prosecutor committed any acts of misconduct on direct appeal (See Respondent's Ex. 3). In Florida, post conviction motions cannot be used as a second appeal for issues that were or could have been raised on direct

---

[8]The Court notes that in his reply, Petitioner does not dispute that Ground Six is procedurally barred (Dkt. 21).

appeal. *See, e.g., Parker v. State*, 611 So.2d 1224, 1226 (Fla. 1992) ("We have repeatedly said that a motion under Rule 3.850 cannot be used for a second appeal to consider issues that either were raised in the initial appeal or could have been raised in that appeal."). This Circuit has long recognized this aspect of Florida law. *See Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir.) (under Florida law, an issue which could have been raised on direct appeal may not be reviewed in a rule 3.850 motion), *cert. denied*, 498 U.S. 832 (1990).

"[I]f 'it fairly appears that the state court rested its decision primarily on federal law,' this Court may reach the federal question on review unless the state court's opinion contains a 'plain statement that its decision rests upon adequate and independent state grounds.'" *Harris v. Reed*, 489 U.S. 255, 261 (1989) (quoting *Michigan v. Long*, 463 U.S. 1032, 1042 (1983)).   In denying Petitioner's claim, the state post conviction court issued a "plain statement" applying the independent and adequate state procedural bar.   The state appellate court's silent affirmance is presumed to be based on the state procedural rule. *See Harmon v. Barton*, 894 F.2d at 1273 (A state appellate "court's per curiam affirmance of the trial court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts.").   Consequently, this claim is procedurally defaulted.

Because Petitioner shows neither cause and prejudice nor manifest injustice to overcome the procedural default, the review of Ground Six is procedurally barred.

## Conclusion

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, it is **ORDERED** that:

1. The Amended Petition for Writ of Habeas Corpus (Dkt. 11) is **DENIED**.

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on ___July 2<sup>d</sup>___, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copy to: Petitioner *pro se*
         Counsel of Record

SA:sfc

22